UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DION DAVIS and KENLOY SEYMORE,
on behalf of themselves and others similarly
situated,

       Plaintiffs,                                  **COMPLAINT**

        v.

                                              **Case No.:**

The CITY OF NEW YORK and the
DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK.

       Defendants.
------------------------------------------------------------X

       Dion Davis and Kenloy Seymore (collectively, "plaintiffs") on behalf of themselves and all others similarly situated, allege as follows:

       1.     Plaintiffs, on behalf of themselves and all others similarly situated, bring this lawsuit seeking recovery against defendants for defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and allege that they are entitled to recover from defendants: (1) unpaid overtime, (2) liquidated damages, and (3) attorneys' fees and costs.

       2.     Plaintiffs, on behalf of themselves and all others similarly situated, further bring this lawsuit seeking recovery against defendants for defendants' violations of the New York Labor Law, Art. 6, § 190 *et. seq*., and Art. 19, § 650 *et. seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. §§ 142, 143 (collectively "NYLL").

       3.     Plaintiffs retained the Law Office of Brian L. Greben to represent plaintiffs, FLSA collective plaintiffs and class members in this litigation, and have agreed to pay the firm a reasonable fee for its services.

       4.     Plaintiffs' consent to sue forms are attached hereto as Exhibit "A."

## JURISDICTION AND VENUE

1

5. The Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA. The Court has supplemental jurisdiction over the New York state law claims, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in the district because defendants conduct business in the district, and the acts and/or omissions giving rise to the claims herein alleged took place in the district.

## THE PARTIES

7. Plaintiff Dion Davis is a resident of Bronx, New York.

8. Plaintiff Kenloy Seymore is a resident of Mount Vernon, New York.

9. Defendant City of New York ("NYC") is, *inter alia*, an entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Sections 3(d) and (x) of the FLSA, 29 U.S.C. § 203 (d) and (x). The City of New York has a principal office and place of business located at City Hall, New York, New York 10007 and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, New York, 10007.

10. Defendant Department of Education ("DOE") is a body established pursuant to New York State Education Law §§ 2590-b and 2590-g, and is, *inter alia,* an entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Sections 3(d) and (x) of the FLSA, 29 U.S.C. § 203 (d) and (x). The DOE has a principal office and place of business located at the Tweed Courthouse, 52 Chambers Street, New York, New York 10007 and may be served with process by serving the Office of the General Counsel of the DOE, 52 Chambers Street, New York, New York, 10007, and the Office of Corporation Counsel, 100 Church Street, New York, New York, 10007.

11. At all relevant times, defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

12. At all relevant times, defendants have employed "employee[s]," including plaintiffs, the FLSA collective plaintiffs and class members, and those similarly situated under the FLSA and New York Labor Law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13. Plaintiffs bring and seek to prosecute their FLSA claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 207, and 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by defendants, including all employees who are or were formerly employed by defendants as "cleaners," "firepersons," "handypersons," "stationary engineers," (collectively, "custodians") and/or other similarly situated current and former employees holding comparable positions, but different titles ("FLSA collective plaintiffs"), at any time on or after the date that is three years before the filing of the Complaint in this case as defined herein (the "Collective Action Period").

14. At all relevant times prior to August 12, 2016, plaintiffs and the other FLSA collective plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to defendants' decisions, policies, plans and common policies, programs, practices, procedures, protocols, routines, and rules, including willfully failing and refusing to pay plaintiffs and the other FLSA collective plaintiffs one-and-one-half times their regular hourly rate for work in excess of forty (40) hours per workweek. The claims of plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

15. The FLSA Claims for Relief are properly brought under and maintained as an opt-

in collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 207, and 29 U.S.C. § 216(b).

16. The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to defendants.

## **RULE 23 CLASS ALLEGATIONS - NEW YORK**

17. Plaintiffs bring New York State law Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by defendants, including all employees who are or were formerly employed by defendants as custodians and/or other similarly situated current and former employees holding comparable positions, but different titles, on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

18. All said persons, including plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the class members are determinable from the records of defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

19. The proposed Class is so numerous that joinder of all Members is impracticable, and the disposition of their claims as a Class will benefit the parties and the court.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of defendants, upon information and belief, there are more than two hundred (200) Members of the Class.

20. Plaintiffs' claims are typical of those claims which could be alleged by any

member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the class members were subject to the same practices of defendants, as alleged herein, including willfully failing and refusing to pay class members one-and-one-half times their regular hourly rate for work in excess of forty (40) hours per workweek. Defendants' policies and practices affected all class members similarly, and defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by an attorney who is experienced and competent in both Class action litigation and employment litigation and has previously represented clients in wage and hour cases.

22. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to a Class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a Class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a

Class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, Class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a Class action.

23. Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

24. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    (a) Whether defendants properly compensated plaintiffs and class members for overtime by paying them overtime pay for the hours worked in excess of forty (40) hours per workweek within the meaning of NYLL Article 19, § *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

    (b) Whether defendants willfully failed to compensate plaintiffs and class members for overtime by paying them overtime pay for the hours worked

        in excess of forty (40) hours per workweek within the meaning of NYLL Article 19, § *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

(c) The nature and extent of the class-wide injury and the appropriate measure of damages for the Class;

(d) Whether defendants had a policy of misclassifying "cleaners," "handypersons," "firepersons," "stationary engineers," and other similarly situated current and former employees holding comparable positions from coverage of the overtime provisions of the NYLL;

(e) Whether defendants' policy of misclassifying "cleaners," "handypersons," "firepersons," "stationary engineers," and other similarly situated current and former employees holding comparable positions was done willfully; and

(f) Whether defendants can prove that their unlawful policies were implemented in good faith.

## FACTS

### A. ALLEGATIONS APPLICABLE TO ALL PLAINTIFFS, FLSA COLLECTIVE PLAINTIFFS AND CLASS MEMBERS

25. As noted above, plaintiffs are custodians working for defendants in public schools throughout New York City. The work that plaintiffs performed for defendants, regardless of their title, primarily included:

    (a) emptying trash cans;

    (b) washing trash cans;

    (c) removing chewing gum;

    (d) sweeping;

(e) mopping;

(f) cleaning sinks and water fountains;

(g) vacuuming rugs;

(h) replacing lamps in classrooms, offices and corridors;

(i) cleaning glass in classrooms and exit doors;

(j) cleaning window sills and "kick plates";

(k) dusting;

(l) cleaning and sanitizing all bathrooms, including walls, stalls, bowls, seats, sinks and floor;

(m) restocking toilet paper, soap and paper towels;

(n) polishing metallic surfaces;

(o) removing graffiti;

(p) cleaning mirrors;

(q) removing marks, smudges and graffiti from tile and painted surfaces;

(r) buffing floors;

(s) opening buildings and starting heating plant;

(t) monitoring HVAC unit;

(u) turning on lights;

(v) unlocking exterior doors;

(w) testing air, fire and intrusion alarms;

(x) testing sprinkler systems;

(y) filling out forms according to boiler reading and outside temperature;

(z) clearing outside area and play yard area daily;

(aa) weeding and trimming bushes;

  (bb)  washing outside area;

  (cc)  restocking bathrooms;

  (dd)  spot checking for any unsanitary hazards;

  (ee)  organizing supplies, taking inventory, reporting any needed material;

  (ff)  performing any necessary preventive maintenance to equipment;

  (gg)  clearing roof area;

  (hh)  greasing and oiling motors and fans; and

  (ii)  cleaning boiler tubes, boiler interior, tees, breechings and all accessible areas of the boiler.

26. At no time have plaintiffs' job duties included hiring or firing other employees.

27. At no time have plaintiffs had the power to discipline other employees.

28. At no time have plaintiffs' duties differed substantially from defendants' non-exempt hourly paid employees.

29. At no time have plaintiffs exercised a meaningful degree of independent discretion with respect to the exercise of their duties.

30. At all times while working for defendants, plaintiffs' primary duties were manual in nature, and manual duties occupied the majority of their working hours.

31. Plaintiffs' Monday through Friday schedules from April 2012 through August 12, 2016 (the "relevant period"), were typical of custodians, who usually work at more than one school.

32. Plaintiffs occasionally worked on weekends during the relevant period. Defendants paid them overtime at a rate of 1.5 times their regular hourly rates, as described below, for the work they performed on weekends. Accordingly, plaintiffs were adequately paid for the work they performed on weekends, and they are not claiming damages for those hours in

the instant Action. Unless stated otherwise, plaintiffs received "straight time" – i.e., their regular hourly rate – for all other hours worked prior to August 12, 2016, regardless of whether they had already worked forty (40) hours per week.

33. Prior to August 2016, all custodians reported directly to "Custodian Engineers," who are DOE employees in charge of custodian services at the individual New York City public schools. This system, which was created in the early 20th century, has been plagued by corruption and improper treatment of employees, including failure to properly pay or allocate overtime.

34. NYC began to take a more direct involvement in the management and pay of school custodians during the Bloomberg administration, at which time NYC began restricting the DOE's ability to hire and/or pay custodians, and tried to replace the "Custodian Engineer" system with private employees.

35. Under, Mayor Bill de Blasio, NYC increased its direct involvement in the employment of school custodians. After an investigation into the employment practices regarding school custodians, NYC abandoned its attempts to privatize the custodians. In April 2016, NYC created a non-profit corporation, New York City School Support Services, Inc. ("NYCSSS"), to which all custodians now report. *See De Blasio's Bizarre School-Custodian "Solution"*, NEW YORK POST, May 21, 2016. In press releases and other statements, NYC has stated that the NYCSSS was created, in large part, to address inequities and unfairness vis a vis the hiring and pay of school custodians, including problems relating to the pay and assignment of overtime.

36. The NYCSSS is controlled by the DOE, and nothing has changed with respect to the custodians' day to day scheduling and work. Custodians are still managed directly by the DOE through Custodian Engineers.

37. NYCSSS took over the direct management of school custodians' payroll on or about August 12, 2016. From that point forward, plaintiffs began receiving overtime at a premium rate of 1.5 times their regular hourly rate for all hours worked over 40 hours per week, regardless of whether these hours were performed during weekdays or weekends.

38. Defendants did not begin paying plaintiffs and the other custodians overtime because something about their jobs changed after NYCSSS took over the custodian's payroll on August 12, 2016 – plaintiffs' job duties, location, schedule, management, and every other aspect of their employment remained the same from March 2006 through December 22, 2016. Rather, defendants began paying custodians overtime because of the involvement of the NYCSSS, which was created to correct labor law abuses involving custodians.

39. Defendants did not receive reimbursement for the unpaid overtime they earned prior to August 2016. They were aware, however, through reports in the media and statements by the custodians' unions, that NYCSSS was continuing to negotiate with the custodians' representatives regarding outstanding employment issues.

40. Unfortunately, instead of paying the custodians back the overtime they are owed, defendants slashed their hours in December 2016.

41. At no time prior to August 12, 2016, had defendants paid plaintiffs overtime at a rate of 1.5 times their regular hourly rate for weekday hours worked in excess of forty (40) hours per work week, as defendants were required to do under the FLSA and the NYLL.

42. Plaintiffs believe there are at least two hundred (200) similarly situated employees to whom, at least until August 12, 2016, defendants unlawfully failed to pay overtime at a rate of 1.5 times their regular hourly rate for hours worked in excess of forty (40) hours per work week.

43. Defendants knowingly and willfully operated their business with a policy of not

paying overtime at a rate of 1.5 times each employee's regular hourly rate to plaintiffs, FLSA collective plaintiffs, and class members.

### B. INDIVIDUAL DEFENDANTS

#### a. Dion Davis

44. Plaintiff Dion Davis was hired by defendants in 2011 and has been continuously employed by defendants since that time. He has worked as a fireman in several schools in the New York City public system including, *inter alia*, P.S. 226, located at 1950 Sedgwick Avenue, Bronx, New York, and Samuel Gompers High School ("Samuel Gompers"), located at 455 Southern Boulevard, Bronx, New York.

45. From April 2012 through August 12, 2016, the schools where Mr. Davis worked include, but are not limited to: P.S. 226 from Monday through Friday, eight (8) hours per day between the hours of 6:00 a.m. and 3:00 p.m., and Samuel Gompers from Monday through Friday, between the hours of approximately 5:00 p.m. and 11:30 p.m.

46. As a "Fireperson" Mr. Davis' regular hourly rates were:

    (a) $20.68 per hour from April 2012 through December 2014;

    (b) $23.52 from January 2015 through December 2015; and

    (c) $24.70 from January 2016 to August 12, 2016.

47. From April 2012 through December 2016, Mr. Davis worked at least SEVENTY-TWO AND ONE-HALF (72.5) hours for defendants each week between Monday and Fridays at his regular hourly rate; defendants were legally obligated to pay him a premium rate of 1.5 times is regular hourly rate for at least THIRTY-TWO AND ONE-HALF (72.5) of these hours but failed to do so.

#### b. Kenloy Seymore

48. Plaintiff Kenloy Seymore was hired by defendants in approximately 2002 and has

been continuously employed by defendants since that time. He has worked as a custodian and handyperson in several schools in the New York City public system including, but not limited to: P.S. 041, located at 3352 Olinville Avenue, Bronx, New York, and P.S. 143, John Peter Tetard Junior High School, located at 210 West 231st Street, Bronx, New York.

49. On Mondays through Fridays, from April 2012 through August 12, 2016, Mr. Seymore worked at P.S. 143 between the hours of 7:00 a.m. and 3:00 p.m., and from at P.S. 141 he worked three (3) hours every evening from between the hours of 5:00 p.m. and 9:00 p.m. Upon information and belief, Mr. Seymore worked additional shifts at additional New York City public schools during this period for which he was entitled to be paid overtime at a premium rate of 1.5 times his regular hourly pay but was not.

50. At all relevant times, Mr. Seymore's job title at P.S. 141 was "Cleaner." At all relevant times, Mr. Seymore's title at P.S. 143 was "was "Handyperson." Mr. Seymore's job duties did not change, regardless of his title. Indeed, these titles had no purpose other than to designate what each custodian was paid as an hourly rate.

51. His regular hourly regular hourly rates as a "Cleaner" were:

    (a)    $18.13 per hour from April 12, 2012, through December 2014; and

    (b)    $20.62 from January 2015 to August 12, 2016.

52. His regular hourly regular hourly rates as a "Handyperson" were:

    (a)    $20.33 per hour from April 12, 2012, through December 2014; and

    (b)    $27.52 per hour from September 12, 2014 through August 12, 2016; and

53. Mr. Seymore was occasionally paid 1.5 times his regular hourly rate for additional hours at schools including, but not limited to, P.S. 141 and P.S. 143. Mr. Seymore is not including these hours in his claims.

54. From April 2012 through December 2016, Mr. Seymore worked at least FIFTY-

FIVE (55) hours for defendants each week between Monday and Fridays at his regular hourly rate; defendants were legally obligated to pay him a premium rate of 1.5 times is regular hourly rate for at least FIFTEEN (15) of these hours but failed to do so.

## FIRST CLAIM FOR RELIEF

(FLSA Overtime Violations, 29 U.S.C. § 201, et seq. Brought by
Plaintiffs on Behalf of Themselves, the FLSA Collective Plaintiffs and Class Members)

55. Plaintiffs, on behalf of themselves, the FLSA collective plaintiffs and class members, reallege and incorporate by reference all previous paragraphs.

56. Throughout the statute of limitations period covered by these claims, the FLSA collective plaintiffs and class members regularly worked in excess of forty (40) hours per workweek.

57. At all relevant times prior to August 12, 2016, defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the plaintiffs, FLSA collective plaintiffs and class members at one-and-one-half times their regular hourly rates for work in excess of forty (40) hours per workweek, even though plaintiffs, the FLSA collective plaintiffs and class members were entitled to overtime.

58. At all relevant times prior to August 12, 2016, defendants willfully, regularly and repeatedly failed to pay plaintiffs, the FLSA collective plaintiffs and class members at the required overtime rates of at least one-and-one-half times their regular rates for hours worked in excess of forty (40) hours per workweek.

59. Plaintiffs, on behalf of themselves, the FLSA collective plaintiffs and class members, seek damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just

and proper.

## SECOND CLAIM FOR RELIEF

(New York Overtime Violations, N.Y. Lab. L.
§ 650 et seq., N.Y. Comp. Codes R. & Regs. § 142 et seq.,
Brought by Plaintiffs, the FLSA Collective Plaintiffs and Class Members)

60. Plaintiffs, on behalf of themselves, the FLSA collective plaintiffs and class members, reallege and incorporate by reference all previous paragraphs.

61. At all relevant times prior to August 12, 2016, plaintiffs were employees and defendants were employers within the meaning of NYLL.

62. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to defendants.

63. It is unlawful under New York law for employers to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

64. Throughout the class period, defendants willfully, regularly and repeatedly failed to pay plaintiffs, the FLSA collective plaintiffs and class members at the required overtime rates, one-and-one-half times their regular rates for hours worked in excess of forty (40) hours per workweek.

65. By failing to pay plaintiffs and the class members overtime wages for all hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including, *inter alia*, the regulations in 12 N.Y.C.R.R. §§ 142, 143.

66. As a result of defendants' willful and unlawful conduct, plaintiffs, the FLSA collective plaintiffs and class members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and

attorneys' fees, as provided by N.Y. Lab. Law § 663.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and Members of the Class, pray for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Members of the FLSA opt-in Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiffs as representatives of the FLSA Collective Plaintiffs;

C. Designation of this action as a Class action pursuant to F.R.C.P. 23;

D. Designation of Plaintiffs as representatives of the Class;

E. An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I. Pre-Judgment and post-judgment interest, as provided by law; and

J. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand jury trial on all causes of action and claims with respect to

which they have a right.

Dated: Great Neck, New York
       April 25, 2018

                                LAW OFFICE OF BRIAN L. GREBEN

                                Brian L. Greben
                                Attorneys for Plaintiffs
                                DION DAVIS and
                                KENLOY SEYMORE
                                316 Great Neck Road
                                Great Neck, NY 11021
                                (516) 304-5357