# LAW OFFICE OF BRIAN L. GREBEN

| | |
|---|---|
| **316 Great Neck Road** | **Office:   (516) 304-5357** |
| **Great Neck, NY 11021** | **Fax:      (516) 726-8425** |
| **www.grebenlegal.com** | **brian@grebenlegal.com** |

August 6, 2018

**VIA ECF**
Hon. Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square, Room 2202
New York, New York 10007

       Re: *Dion Davis et al. v. City of New York et al.*
          18 cv 3666 (JMF)
          Fairness Reviews of FLSA/NYLL Settlement

Dear Judge Furman:

  This office represents plaintiffs Dion Davis and Kenloy Seymore (collectively "plaintiffs") in the above referenced matter. Plaintiffs write jointly with defendants City of New York and Department of Education of The City of New York (collectively, "defendants") in preparing the instant statement explaining the basis for the proposed settlement, including its provision for attorney fees, and why it should be approved as fair and reasonable.

  The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions. A copy of the Agreement is attached hereto as Exhibit "A." As such, the parties respectfully request that the Court approve the settlement, pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice.

## I. Plaintiffs' Allegations

  Plaintiffs allege that they have been continuously employed by defendants as New York City public school custodians as follows:

- Plaintiff Kenloy Seymore worked as a custodian in several schools in the New York City public system including, but not limited to: P.S. 041, located at 3352 Olinville Avenue, Bronx, New York, and P.S. 143, John Peter Tetard Junior High School, located at 210 West 231st Street, Bronx, New York. On Mondays through Fridays, from April 2012 through August 12, 2016, Mr. Seymore worked at P.S. 143 between the hours of 7:00 a.m. and 3:00 p.m., and from at P.S. 141 he worked three (3) hours every evening from between the hours of 5:00 p.m. and 9:00 p.m. Upon information and belief, Mr. Seymore worked additional shifts at additional New York City public schools during this period for which he was entitled to be paid overtime at a premium rate of 1.5 times his regular hourly pay but was not.

Hon. Jesse M. Furman
August 6, 2018
-2-

- From April 2012 through August 12, 2016, the schools where Mr. Davis worked included, but were not limited to: P.S. 226 from Monday through Friday, eight (8) hours per day between the hours of 6:00 a.m. and 3:00 p.m., and Samuel Gompers from Monday through Friday, between the hours of approximately 5:00 p.m. and 11:30 p.m.  Mr. Davis alleges that defendants were legally obligated to pay him a premium rate of 1.5 times is regular hourly rate for at least thirty-two and one-half (32.5) of these hours but failed to do so.

Plaintiffs further allege that their employment and hours were typical of custodians.

In April 2016, a non-profit corporation, New York City School Support Services, Inc. ("NYCSSS") was established.  Plaintiffs allege that NYCSSS took over the direct management of school custodians' payroll on or about August 12, 2016, and from that point forward, they began receiving overtime at a premium rate of 1.5 times their regular hourly rate for all hours worked over 40 hours per week.  Plaintiffs further allege that prior to the NYCSSS' takeover, defendants did not pay them overtime at a rate of 1.5 times their regular hourly rate for weekday hours worked in excess of forty (40) hours per work week, as defendants were required to do under the FLSA and the NYLL.

## II.  Procedural History

On April 25, 2018, plaintiffs, on behalf of themselves and others similarly situated, filed a Complaint against defendants alleging claims for unpaid overtime wages and liquidated damages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Minimum Wage Act, N.Y. Lab. Law § 650 et seq. ("NYLL").  Plaintiffs also sought a class representative fee, attorneys' fees, costs and interest.

In May 2018, the parties' attorneys contacted one another and began settlement negotiations.  Thereafter, the parties exchanged documents to facilitate settlement, including records of wages paid to and hours worked by plaintiffs.  Plaintiffs' counsel used these records to create spreadsheets illustrating alleged underpayments and other damages.

On July 17, 2018, defendants' counsel advised the Court that the parties had reached an agreement in principal and were drafting settlement documents.  On July 18, 2018, the Court adjourned the deadlines pending in the instant action *sine die* in anticipation of the submission of settlement documents.

## III. Settlement Terms

The parties have agreed to settle this action in its entirety using records provided by defendants showing the exact dates plaintiffs worked, and exactly how much each were paid.  Based on these documents, parties agreed to settle this matter in its entirety for the the payment of the following by defendants:

- Kenloy Seymore:

    a. back pay in the total amount eighteen thousand four hundred and thirty nine dollars and no cents ($18,439.00); and

Hon. Jesse M. Furman
August 6, 2018
-3-

      b. liquidated damages in the total amount of twenty three thousand four hundred and thirty nine dollars and no cents ($23,439.00). This amount represents liquidated damages equal to the back pay award plus a $5,000 service award.

- Dion Davis

      a. back pay in the total amount of twelve thousand eighty nine dollars and no cents ($12,089.00); and

      b. liquidated damages in the total amount of seventeen thousand eighty nine dollars and no cents ($17,089.00). This amount represents liquidated damages equal to the back pay award plus a $5,000 service award.

- The City of New York further agrees to pay twenty-three thousand dollars and no cents ($23,000.00) for costs, disbursements and attorney's fees ("Attorney's Fees").

As noted above, for the Court's convenience a copy of the Agreement is annexed hereto as Exhibit "A."

## IV. Analysis Regarding Review of FLSA Settlements

The Second Circuit requires that settlement agreements in Fair Labor Standards Act (FLSA) cases obtain court or Department of Labor approval. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Clem v. Keybank, N.A.*, *Clem v. Keybank, N.A.*, No. 13 cv 789 (JCF), 2014 WL 2895918, at *7 (S.D.N.Y. June 20, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Courts evaluating whether stipulated FLSA settlements are reasonable consider a variety of factors, including:

    (1) the plaintiffs' range of possible recovery;

    (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;

    (3) the seriousness of the litigation risks faced by the parties;

    (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and

    (5) the possibility of fraud or collusion.

*See Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (internal quotations omitted).

The parties believe that the proposed settlement terms in this case are fair and reasonable to plaintiffs and defendants. The settlement represents a good faith compromise of the parties'

*bona fide* dispute regarding whether plaintiffs have complied with all conditions precedent to bringing a NYLL claim, whether an award of liquidated damages is appropriate, and whether a two or three-year statute of limitations would apply to plaintiffs' FLSA claims. Defendants' defenses regarding the City being an improper party and that to the extent there were FLSA violations, if any, they were not willful and were in good faith, were asserted and considered in the settlement negotiations. Plaintiffs' counsel shared his calculations of the damages under plaintiffs' theories and the parties used this information to negotiate a fair settlement. This compromise was reached after arms-length negotiations between the parties.

As to the range of recovery, plaintiffs consider this to be a fair settlement because it exceeds their estimates of the compensatory and liquidated damages for the portion of their claims occurring within the FLSA statute of limitations. This is particularly significant because defendants have indicated that if a settlement is not achieved, they will move to dismiss plaintiffs' claims stemming from events that occurred prior to the limit of the three-year FLSA statute of limitations. If defendants' contemplated motion to dismiss were granted, plaintiffs' NYLL claims would be dismissed, and their recovery would be limited to the three-year FLSA statute of limitations – an amount that is less than the amount of the settlement described herein. On the other hand, if defendants' anticipated motion to dismiss were to be denied as to plaintiffs' NYLL claims, defendants would risk doubling the applicable statute of limitations from a maximum of three years under the FLSA to six years under the NYLL.

Plaintiffs respectfully submit that the above facts coupled with: a) the early stage of litigation; and b) the relatively swift payout to plaintiffs (as opposed to a speculative payment after years of litigation in the District Court) weigh in favor of settlement.

With respect to avoiding anticipated burdens and expenses, litigating FLSA damages can be and would be a fact-intensive process demanding in-depth and costly investigation by all parties. Without this settlement, the parties would need to spend significant amounts of time, money and expense to undertake lengthy discovery. Furthermore, with respect to the third factor, as noted above, there is no guarantee of success on either side. Given the uncertainty over the potential outcome, the parties were motivated to settle this dispute. With respect to the fourth factor, the parties engaged in good faith, arm's-length negotiation in reaching this settlement. Counsel for the parties, armed with instructions from their clients, discussed settlement terms until a tentative settlement was reached. The fact that the settlement was negotiated at arms' length, compels the conclusion that the proposed settlement is fair and should be approved. *Chapman-Green v. Icahn House W. LLC*, No. 11 cv 1190 (MHD), 2013 WL 658245 *2 (S.D.N.Y. Feb. 21, 2013) ("[T]he surrender of the possibility of liquidated damages gives plaintiff immediate relief and avoids the risk, which is not insubstantial, of a potential loss or a much smaller recovery."); *Johnson v. Brennan*, 2011 WL 4357376, *12 (S.D.N.Y. 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."). This is particularly so in light of the fact that the settlement is the result of hard fought negotiations between counsel. *Meigel v. Flowers of the World, NYC, Inc.*, No. 11 cv 465 (KBF), 2012 WL 70324 *1 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."); *Hernandez v. C-Penn Foods Inc.,* 2011 U.S. Dist.

LEXIS 144798 (S.D.N.Y. 2011) ("[G]iven the disputed issues of fact relating to plaintiff' wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable.").

With respect to the service award, such awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013). Plaintiffs' settlement demand for a service award is based on what could be awarded if this matter were to be certified as a class and proceed either to judgment or a settlement after discovery. Similar service awards at this early stage of litigation are supported by case law in the SDNY. *See Mills v. Capital One*, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015)(approving a service award of $6,000 for the named plaintiffs when the only discovery exchanged was to aid in settlement negotiations); *Henry v. Little Mint, Inc.*, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) (approving a service award of $10,000 for the named plaintiff when limited discovery was conducted in advance of mediation); *Beckman*, 293 F.R.D. at 483 (approving a service award of $7,500).

Finally, given the parties' arms-length negotiating, the parties believe that there was no opportunity for and no possibility of fraud or collusion. The parties represented their clients zealously and obtained what the parties consider to be an appropriate settlement.

**V. Attorney's Fees and Costs**

Plaintiffs will not be paying any attorney's fees. Instead all of their attorney's fees and litigation costs will be paid directly by defendants pursuant to the parties' negotiations and defendants' review of plaintiff's lodestar records.

Plaintiffs' counsel will be receiving $23,000 in fees and costs. This sum is 24.5% of the total settlement of $94,056, and is considerably less than the typical FLSA/NYLL attorney fee award of one third of the settlement amount plus costs. *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 cv 6126 (NGG) (VMS), 2014 WL 6621081 *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Chambery v. Tuxedo Junction Inc.*, 2014 WL 3725157 (W.D.N.Y. Jul. 25, 2014); *Khait v. Whirlpool Corp.,* 2010 WL 2025106, *8 (E.D.N.Y. 2010) (33% of settlement or $3,052,500 in FLSA and NYLL case); *Hens v. Clientlogic Operating Corp.*, 2010 WL 5490833, at *2 (W.D.N.Y. 2010) (attorney fee award of 33% of total settlement "fair and reasonable using a 'percentage-of-recovery' method of calculation, consistent with 'the trend in this Circuit.'") (quoting *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)); *Stefaniak v. HSBC Bank USA, N.A.,* 2008 WL 7630102, *3 (W.D.N.Y. 2008) (33% of $2.9 million fund in FLSA and NYLL case)) (other citations omitted).

Furthermore, the costs and fees award is less than what is owed pursuant to plaintiffs' contingency fee engagement agreements with counsel, which provide that counsel will receive one-third of any settlement amount as fees and be reimbursed for costs incurred. *See e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007) (holding that private retainer agreement granting attorneys one third of total damages was valid because it reflected what reasonable clients would pay); *Rangel v. 639 Grand St. Meat &*

Hon. Jesse M. Furman
August 6, 2018
-6-

*Produce Corp.*, No. 13 cv 3234 (LB), 2013 WL 5308277 *1 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit.").

When courts review contingency fee allocations in settlement agreements, they use "the lodestar method…as a mere crosscheck, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Chambery supra*, 2014 WL 3725157 at *9 (quote and citation omitted). *See also Johnson, supra,* 2011 WL 4357376 at *15 ("While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee methods as rigorously.")

In any event, the $23,000 figure is less than plaintiffs' counsel is owed pursuant to the lodestar method of calculating attorneys' fees. Plaintiffs' counsel worked 65.3 hours on the instant matter. Many aspects of this case, including estimating plaintiffs' damages, drafting the complaint, and preparing settlement demands, were unusually difficult because of the nature of plaintiffs' jobs. Each worked in several different locations, were paid multiple hourly rates, and had inconsistent schedules. Furthermore, preparing offers and demands was very labor intensive, because it involved scrutinizing defendants' records on an hour by hour, day by day basis for periods spanning several years. Mr. Seymour's claims were particularly difficult to address, because he was a kind of jack-of-all-trades and performed a variety of different tasks in different places.

Using the lodestar method, at the undersigned's usual hourly rate of $400 per hour, plaintiffs have incurred at least $26,120 in fees prosecuting plaintiff's case. An estimate of the hours worked by plaintiff's counsel is annexed hereto as Exhibit "B."

For all the above reasons, the parties believe that this proposed settlement is fair and reasonable and therefore the parties respectfully request that the Court So Order the Stipulation of Settlement that is appended to the Agreement as Exhibit "A." The parties thank the Court for its attention to this matter.

                                              Very truly yours,

                                              Brian L. Greben

Encls.

cc:    Andrea O'Connor